El Pueblo de Puerto Rico, demandante y apelado, *v.* Juan Bautista Galarza, Crescencio Martínez y Faustino Devara, demandados y apelantes.

No. 4883.—*Sometido:*. Abril 26, 1930. *Resuelto:* Diciembre 12, 1930.

*R. Atiles Moreu* y *Guillermo S. Pierluissi,* abogados de los apelantes; *Attorney General James R. Beverley* y *Arturo Ortiz Toro, Primer Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

La forma en que se presenta en este caso el más discutido de los señalamientos de error, y la confusión que puede producirse al leer los argumentos de las partes, nos fuerzan a insertar las alegaciones de la demanda y la contestación.

De la demanda son las que sigue:

"1.—Que El Pueblo de Puerto Rico es una entidad política y social constituída como tal en virtud del Acta Jones, y tiene capacidad para demandar, y los demandados Juan Bautista Galarza, Crescencio Martínez y Faustino Devara son mayores de 21 años, y vecinos de Barros, con capacidad para demandar, y ser demandados.

"2.—Que el demandante, o sea El Pueblo de Puerto Rico, dentro del año precedente a la presentación de esta demanda estaba en posesión real y material en carácter de dueño, y lo está actualmente, excepto de la pequeña parcela que se describe en la SEGUNDA CAUSA DE ACCIÓN, de la finca que se describe como sigue: 'FINCA RÚSTICA, ubicada en el barrio Ala de Piedra (sitio "Guineo") del término municipal de Barros, con cabida de 96.95 cuerdas, equivalentes a 38 hectáreas, diez áreas y 34 centiáreas. Colinda por el norte con el río Bauta, también nombrado Toro Negro; por el sur, con la cuchilla divisoria de Juana Díaz y Barros, que separa terreno de la Hacienda Guindaleza, propiedad de José Oliver y Francisco Luna; por el este, con Emilio Esteban, y por el oeste, con Juan Bautista Galarza.'

"3.—Que allá para el día 17 de marzo de 1928, el demandado Juan Bautista Galarza, por sí y por medio de sus peones y especialmente por conducto de los otros codemandados, se introdujo en la finca des-

crita, cortando en la misma más de doscientos cincuenta árboles, tales
como mesa, mantequero y camasey, continuando el corte sin interrup-
ción, y alegando ser dueño del predio descrito, ha prohibido al guar-
dián de El Pueblo de Puerto Rico en la finca descrita, Sr. Dolores
Cosme, el corte de árboles y cultivo de la finca, amenazándolo con sa-
carlo de la misma a viva fuerza.

"4.—El demandado Juan Bautista Galarza, por sí o por conducto
de sus subalternos y peones y especialmente por mediación de los otros
codemandados, intenta perturbar al demandante en la posesión y dis-
frute de la finca de 96.95 cuerdas anteriormente descrita, amenazando
proseguir en el corte de árboles.

"Segunda Causa de Acción:

"1. Se reproducen los hechos primero y segundo de la primera
causa de acción.

"2. Que el demandado Juan Bautista Galarza, por sí y por medio
de sus peones, especialmente los otros codemandados, allá para el día
17 de marzo de 1928, despojó al demandante de una parcela de te-
rreno ubicada dentro de la finca que se describe en la primera causa
de acción y de la cual forma parte integrante, teniendo dicha parcela
una extensión aproximada de quinientos metros cuadrados, formando
un polígono rectangular de 25 metros de frente por 20 de fondo, que
se miden de punto a punto, constituídos éstos por cuatro estacones
de mesa. La parcela descrita queda hacia la parte norte de la finca
que se describe en la primera causa de acción y como a treinta y
seis metros de la casa donde reside el guardián del demandante, Sr.
Dolores Cosme.

"3. Que sobre la parcela de quinientos metros cuadrados des-
crita, el demandado Juan Bautista Galarza por sí y por medio de sus
subalternos, especialmente los codemandados, ha principiado a cons-
truir tres casas, una de 6.64 metros por 4.98 metros, otra de 4.98 me-
tros por 3.32 metros; la otra de 4.15 metros por 2.90 metros, encla-
vando los zocos de las mismas y construyendo el armazón."

Y de la contestación, éstas:

"Primero: Admiten el hecho primero de la demanda.

"Segundo: Niegan específicamente que El Pueblo de Puerto Rico,
dentro del año precedente a la presentación de esta demanda, o en
cualquier otra fecha, estuviera en posesión real y material, en carác-
ter de dueño, o en cualquier otro concepto, o que lo esté actualmente,
de la finca que se describe, o de cualquier parte de ella: 'finca rús-

TICA ubicada en el barrio Ala de Piedra, sitio "Guineo", del término municipal de Barros, con cabida de 96.95 cuerdas, equivalentes a 38 hectáreas, diez áreas, y 34 centiáreas, colinda por el norte con el río Bauta, también nombrado Toro Negro; por el sur, con la cuchilla divisoria de Juana Díaz y Barros, que separa terreno de la Hacienda Guindalera, propiedad de José Oliver y. Francisco Luna: por el este con Emilio Esteban; y por el oeste, con Juan Bautista Galarza.'

"TERCERO: Niegan específicamente, que, allá para el día 17 de marzo de 1928, o en cualquier otra fecha, el demandado Juan Bautista Galarza por sí y por medio de sus peones y especialmente por conducto de los otros codemandados, o por conducto de cualquier persona, se introdujera en la finca descrita, cortando en la misma más de doscientos cincuenta árboles, o cualquier cantidad de árboles, tales como mesa, mantequero, y camasey, o cualquier otra clase de árbol; niegan asimismo que, en caso de que hubiera habido corte, éste continuara sin interrupción; niegan asimismo que alegando ser dueño del predio descrito, haya prohibido al guardián de El Pueblo de Puerto Rico, Sr. Dolores Cosme, el corte de árboles y cultivo de la finca; niegan asimismo que le hayan amenazado en cualquier momento o tiempo de sacarle de la finca descrita a viva fuerza. Alegan en contrario, que en caso de que Juan Bautista Galarza, o sus empleados hayan cortado árboles, o ejercitado cualquier acto de dominio, lo han hecho dentro de una finca de 93 cuerdas, que colinda por el norte con Emilio Esteban hoy; por el sur con Francisco Figueroa y Flor Galarza y Torres; por el este con Casimiro Figueroa; y don Domingo Olivieri; y por el oeste con el río Toro Negro y Sucesión de Julio Olivieri. Esta finca está sita en el barrio Ala de la Piedra de Barros, Puerto Rico, y es dueño en pleno dominio de la misma, el demandado Juan Bautista Galarza y Torres.

"CUARTO: Niegan específicamente que el demandado Juan Bautista Galarza, por sí, o por conducto de sus subalternos y. peones, o especialmente por mediación de los otros codemandados, o por conducto o mediación de cualquiera otra persona o personas, intente perturbar al demandante, en la posesión o disfrute de la finca de 96.95 cuerdas anteriormente descrita, y asimismo niegan que estén amenazando proseguir el corte de árboles; alegan en contrario que niegan específicamente y de modo terminante, que El Pueblo de Puerto Rico sea dueño de la parcela de 96.95 cuerdas anteriormente descrita en la demanda, y en el hecho segundo de la contestación; sosteniendo que si ha habido corte de árboles, ha sido en la finca de 93 cuerdas descrita en el hecho tercero de esta contestación, de la cual es dueño en pleno dominio, el demandado Juan Bautista Galarza y Torres.

"Contestación a la Segunda Causa de Acción

"Primero: Admiten el hecho primero de la segunda causa de acción:

"Segundo: Niegan específicamente que El Pueblo de Puerto Rico, dentro del año precedente a la presentación de esta demanda, o en cualquier otra fecha, estuviera en posesión real y material, en carácter de dueño, o en cualquier otro carácter, o que lo esté actualmente, de la finca que pasamos a copiar: 'Finca rústica ubicada en el barrio Ala de la Piedra, sitio "Guineo" del término municipal de Barros, con cabida de 96.95 cuerdas, equivalentes a 38 hectáreas, diez áreas y 34 centiáreas, colinda por el norte con el río Bauta, también nombrado Toro Negro; por el sur, con la cuchilla divisoria de Juana Díaz y Barros, que separa terrenos de la hacienda Guindalera, propiedad de José Oliver y Francisco Luna. Por el este con Emilio Esteban; y por el oeste con Juan Bautista Galarza.'

"Tercero: Niegan específicamente que el demandado Juan Bautista Galarza, por sí y por medio de sus peones, especialmente los otros codemandados, o por conducto o mediación de persona alguna, allá para el día 17 de marzo de 1928, o en cualquier otra fecha, despojara al demandante de una parcela de terreno ubicada dentro de la finca que se describe en la primera causa de acción, y de la cual forma parte integrante; negando específicamente que dicha parcela, si existe, forme parte de la aludida finca; niega específicamente que hayan despojado al demandante de la aludida parcela o de parte alguna de la misma; niegan que la supuesta parcela tenga una extensión aproximada de quinientos metros cuadrados; o que la susodicha parcela forme un polígono rectangular, o polígono alguno, de 25 metros de frente por 20 de fondo, o con cualquier otra medida; niegan que las susodichas medidas se midan de punto a punto; y niegan que estén constituídos éstos por cuatro estacones de mesa, o de cualquier otro género. Niegan específicamente que la parcela descrita quede hacia la parte norte de la finca que se describe en la primera causa de acción, o en cualquier otra parte; o que quede como a treinta y seis metros de la casa donde reside el guardián del demandante, Sr. Dolores Cosme, o en cualquier otra distancia o dirección.

"Cuarto: Niegan específicamente, que sobre la parcela de quinientos metros cuadrados descrita, o sobre cualquier otra parcela, el demandado Juan Bautista Galarza Torres, por sí y por medio de sus subalternos, especialmente los codemandados, o por mediación o conducto de cualquier otra persona, haya principiado a construir tres casas, una de 6.64 metros por 4.98 metros; otra de 4.98 metros por

3.32 metros, la otra de 4.15 metros por 2.90 metros, o cualesquiera otras casas de cualesquiera otras dimensiones; niegan que estén enclavando los zocos de las mismas, y estén construyendo el armazón.

"En contrario alegan y sostienen que, en caso de que se estén construyendo casas, están siendo construídas, o lo han sido, dentro de la finca de 93 cuerdas, propiedad del demandado Juan Bautista Galarza y Torres, que se describe en el hecho tercero de la contestación a la primera causa de acción, y nunca en terrenos algunos del demandante."

La contestación aparece jurada en esta forma:

"JURAMENTO DE LA CONTESTACIÓN

"Comparece Juan Bautista Galarza y Torres, y jura: que es el demandado en la presente acción, o sea uno de los demandados en la misma; que es mayor de 21 años de edad, propietario, vecino de Juana Díaz, P. R.; que ha leído cuidadosamente la contestación de epígrafe, y la misma ha sido redactada tomando por base sus instrucciones dadas a su abogado; que todos los hechos expuestos le constan de propio y personal conocimiento ser ciertos, y los hechos negados le constan no ciertos de propio y personal conocimiento, en cuanto a la negación de los mismos, y los niega específicamente de propio y personal conocimiento.

"Ponce, P. R., junio 20, 1928.

"(Fdo.) Juan B. Galarza."

La demanda a que nos referimos fué presentada en la Corte de Distrito de Ponce, y a ella se opuso la contestación que hemos copiado. El Pueblo de Puerto Rico pidió en este interdicto para retener y recobrar la posesión que se le amparara en la que tenía y se le restituyera la de que se le había despojado.

A la contestación se opuso por el demandante una moción eliminatoria con relación al hecho 3º. de la contestación a la primera causa, y al hecho 4º. de la segunda causa, en cuanto en ellos se alegaba el dominio del demandante sobre la finca. La corte declaró con lugar la moción.

El Pueblo pidió luego sentencia sobre las alegaciones, incluyendo en su moción la alegación de ser defectuoso el juramento de la contestación. La parte demandada solicitó

que se le permitiera enmendar el juramento, a lo que accedió la corte; pero el demandante presentó una moción oponiéndose a la enmienda.

En 27 de noviembre de 1928, la corte dictó una resolución declarando con lugar la petición del demandante para que se dictara sentencia por las alegaciones; y así se hizo en el sentido de procedencia de la demanda. Contra esta sentencia se ha interpuesto el recurso de apelación que resolvemos.

Interesa disponer primero de aquellos señalamientos de error cuya solución es evidentemente sencilla.

El cuarto señalamiento se refiere al supuesto error de la corte al eliminar las frases de la contestación que presentaban la alegación de dominio de la finca por el demandado Galarza.

Se ha repetido por este tribunal, y se venía repitiendo por el Supremo de España, que en los interdictos posesorios, *injunctions* de retención y recuperación en nuestro derecho, no cabe discutir el título de dominio. Desde su origen, romano y remoto, los interdictos no han sido otra cosa que el medio procesal de conservación y amparo del estado posesorio, o en otros términos usados por los autores, la protección posesoria. Del especial estado de derecho a que se aplican, y de la necesidad social y jurídica de proteger la posesión, nace la rapidez del procedimiento, y hasta la eliminación de trámites y términos que no se justificaría en los juicios ordinarios.

Se ha dicho en muchas ocasiones por este tribunal que en los casos de *injunction* relativo a posesión, no es el dominio materia propia de discusión o de prueba. Entre otros casos, véanse *Ortiz* v. *Silva*, 28 D.P.R. 384; *Solís* v. *Castro*, 36 D.P.R. 105; *Oliver Cuveljé* v. *González*, 37 D.P.R. 936, y *Vicente* v. *Ortiz, Comisionado*, 38 D.P.R. 106. No es el dominio lo que está en contienda, sino el hecho material de la posesión. Para discutir el derecho a ésta, para aquilatar el título, no basta un procedimiento sumario y rápido, ni bastaría una sentencia como la que recae en esos casos.

Por esa razón, la alegación del título, general y vaga, o específica y precisa, no sólo no es necesaria, sino perjudicial y peligrosa, ya que puede dar pie a que se pretenda establecer prueba acerca de ella. Y así, en este caso, el remedio propio fué la eliminación, correctamente resuelta por la corte.

Bajo el número "Primero" se señala como error que la corte dictó sentencia sobre las alegaciones a base de una demanda que no expone hechos suficientes para determinar causa de acción.

La demanda alega posesión por parte del demandante sobre determinado inmueble; actos de perturbación, y de despojo, por parte de los demandados, que talan árboles en la finca, amenazan al guarda, y ocupan parte de la finca construyendo sobre ella casas. No puede pedirse que en las alegaciones aparezca el detalle meticuloso y quizá redundante que se pretende exigir. La demanda tiene que ser redactada de acuerdo con las exigencias de la ley, pero sin olvidar que va a ser leída, contestada, y últimamente juzgada por hombres que a más de ser versados en la ley, tienen el necesario conocimiento para no sentir la necesidad de que se les expliquen las alegaciones como se explica una lección en las escuelas. Esto que decimos no autoriza el uso de alegaciones vagas, indefinidas, o anfibológicas; basta con sostener que una manera de alegar clara, sencilla, y sin conflicto con la ley, es suficiente.

Las alegaciones de la demanda contienen los hechos esenciales requeridos por la ley que rige este procedimiento.

Sobre el carácter de evasiva en la contestación, aplicación de la doctrina de este tribunal en *Somonte* v. *Mimoso*, 27 D.P.R. 398 y hecho de dictarse sentencia sobre las alegaciones sin permitir la enmienda de la contestación, versan los señalamientos de error números "Segundo," "Tercero" y "Quinto."

Se argumenta largamente sobre si la contestación fué o no evasiva.

Hemos copiado las alegaciones, que no pueden ser cali-

ficadas como perfectas. Necesitamos sentar los principios generales y, a su luz, ver si pueden admitirse como base de una contienda judicial, y de una resolución final.

La ley es ésta (artículo 110, Código de Enjuiciamiento Civil):

"La contestación del demandado contendrá:

"1. Una negación general o especial de los hechos esenciales de la demanda con los cuales no esté conforme el demandado.

"2. Una exposición de cualquiera materia nueva constitutiva de oposición a la demanda o de reconvención. Si se jurare la demanda, la negación de cada alegación impugnada deberá ser específica, y hacerse por afirmación absoluta o según información o creencia del demandado. Si el demandado no tuviere suficiente información o creencia respecto del asunto para poder contestar a una alegación de la demanda, podrá manifestarlo así en su contestación, y formular de este modo su negación. Si la demanda no se jurare, será suficiente una negación general de los hechos, quedando sólo en contienda los hechos esenciales de la demanda."

Como primer extremo importante aparece la exigencia de que cada alegación de la demanda jurada ha de negarse específicamente, y ha de hacerse la negación de manera absoluta o por información y creencia del demandado. La jurisprudencia ha interpretado este precepto legal de manera uniforme y constante. El fin que se persigue es que el litigio verse sobre hechos realmente controvertidos. Todo propósito de evadir una franca y completa controversia, debe quedar relegado a la categoría de irrealizable. Pero esto no quiere decir que la regla sea tal que se haga imposible redactar una contestación que no sea susceptible de objeciones. Esencialmente lo que se exige por ella es que se produzca una negación franca e inteligible.

La exageración al aplicar esta regla lleva a algo que no es permisible en derecho: al absurdo. Y para no dejar paso al absurdo están los tribunales de justicia.

Conviene aquí citar, de nuestra propia jurisprudencia, algo que debe ser tenido como guía en la resolución de este problema.

En el caso *Guzmán* v. *American Railroad Co.*, 29 D.P.R. 402, se ha citado con aprobación, la doctrina siguiente:

"La regla que prohibe las negativas que constituyen una admisión, sin embargo, ha sido afectada por las reglas liberales de interpretación y enmienda a las alegaciones que generalmente prevalecen de acuerdo con el código."

Y asimismo, la que sigue:

"Cuando una negativa que constituye una admisión niega la alegación a que se refiere, el defecto puede ser considerado como de forma solamente y renunciarse a él si no se ha hecho objeción antes del juicio. Elton v. Markham, 20 Barb. (N. Y.) 343; Armstrong v. Danahy, 75 Hun. 405, 27 N. Y. S. 60. Especialmente como se indica en el caso anotado el defecto no será considerado como fatal cuando no aparece que la parte contraria ha sido inducida por ello a su perjuicio. Pigeon v. Osborn, 4 Per. & Dav. (Eng.) 345, 9 Dowl, 511; Hershey v. O'Neill, 36 Fed. 168. First Bank of Texola v. Terrel, anotado enteramente después de este tomo, en la página 681."

En el caso de *Aguayo* v. *Vázquez*, 33 D.P.R. 913, la regla de liberalidad en la interpretación se ha sostenido por este tribunal.

Todavía en una forma más decidida, se sostuvo esta doctrina en el caso *Mazarredo* v. *Echevarría et al.*, 32 D.P.R. 502, siguiéndose asimismo en *Aguayo* v. *Vázquez*, 33 D.P.R. 913.

La dificultad para contestar una demanda jurada, sería casi insuperable, si la doctrina que se acaba de citar no prevaleciera. Es fácil encontrar textos y autoridades que declaren cuándo es defectuosa y hasta fatalmente defectuosa, una contestación; pero no se encuentra, en autoridades, comentaristas y tratadistas, la fórmula de una buena contestación. Es entendido que no nos referimos a aquellos casos en que aparece más o menos claramente el carácter evasivo de las alegaciones contestando, sino a aquéllos en que se ha querido negar, y la expresión de la negativa es defectuosa.

En las alegaciones de la contestación en este caso apa-

rece la negativa específica de los hechos ofrecidos por el demandante, salvo en el extremo a que nos referiremos más adelante. Por ejemplo, en el hecho ''Segundo'' se niega que El Pueblo de Puerto Rico dentro del año precedente a la demanda, o en cualquier otra época, tuviera la posesión material, como dueño o en cualquier otro concepto, de la finca descrita. Realmente es difícil negar de otra manera.

Es verdad que al tratarse del corte de árboles, y después de negar que los demandados, por sí o por otros, lo hayan hecho, se alega que en caso de que ellos hubieran cortado árboles, o realizado actos de dominio, lo hicieron dentro de una finca de 93 cuerdas, de su propiedad. Esta parte de la alegación no es buena; pero la negación se ha hecho anteriormente, en forma suficiente.

En cuanto a la segunda causa de acción, los demandados ''admiten el hecho primero de la segunda causa de acción.'' Y resulta que el hecho primero a que se refieren, se formuló así en la demanda:

''1. Se reproducen los hechos primero y segundo de la primera causa de acción.''

El hecho segundo así reproducido, es el relativo a la posesión material de la finca de 96 cuerdas y 95 centésimas, de que se trata en este caso.

Se hace mucha fuerza por el apelado en esta admisión. Pero basta ver cómo al contestar la primera causa de acción se niega tal posesión, para entender que al redactar la contestación a la segunda, se ha incurrido en un error que es de fácil enmienda. Una equivocación de esta clase no puede dar lugar a una sentencia que decida los derechos de las partes. En esos casos, el permiso para enmendar, aun no solicitado, es el mejor camino, para llegar a una buena solución. No es que las cortes tengan que cuidar de la actuación de los abogados de las partes, sino del caso que ante ellas se presenta, y de la completa solución del problema

de hechos y de derecho que a ellas se ofrece; y para esto una discreta y prudente liberalidad es siempre aconsejable.

Está bien señalado el error, y como tal error lo declaramos.

No es necesario entrar en otros extremos de la apelación, si con la resolución acerca del error de que acabamos de tratar ha de bastar para revocar la sentencia.

*Debe revocarse la sentencia apelada, devolviéndose el caso a la Corte de Distrito de Ponce para que se permita al demandado enmendar su contestación en un término de diez días a contar desde la fecha en que sea recibida la sentencia de esta Corte en la de Distrito de Ponce.*